904 F.2d 36
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Justin A. DIMACCHIA, Plaintiff-Appellant
v.
James F. BURKE, Jr., Blakemore, Rosen, Meeker & Varian Co.,
L.P.A., Defendants-Appellees.
 No. 89-3702.
 United States Court of Appeals, Sixth Circuit.
 June 7, 1990.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and ROBERT E. DeMASCIO, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Appellant Justin A. Dimacchia, the President and Chief Operating Officer of Tacoma Inc., filed this complaint to allege legal malpractice and named as defendants James F. Burke, Jr., and his former law firm Blakemore, Rosen, Meeker & Varian. Dimacchia and other Tacoma Directors retained Burke's services because Tacoma failed to pay the government withholding taxes due from its employees' wages. At the time relevant here, Tacoma was a party to certain loan agreements with Ameritrust Company National Association (Ameritrust). Tacoma defaulted on its obligations under the Ameritrust agreements and liquidation proceedings were instituted with Ameritrust as a participant.
 
 
 2
 Dimacchia and Burke discussed the problem regarding the withholding taxes due the Internal Revenue Service (IRS). During this conversation, Burke made it clear that Dimacchia was responsible for the assessment under 26 U.S.C. Sec. 6672. Burke suggested that the IRS might be willing to consider Ameritrust as a responsible party as well. Since Ameritrust had greater assets than Dimacchia, Burke believed the IRS would likely seek to collect from Ameritrust first. To the extent that the IRS collected from Ameritrust, it could not collect from Dimacchia. Burke indicated that he would submit his views to the IRS in a written brief.[1] Dimacchia argues that he understood Burke would submit a brief, place the burden on Ameritrust, and ultimately reduce the amount the IRS would seek to collect from him. On the other hand, Burke contends that the plan to submit a brief was altered. He researched and orally discussed the Ameritrust theory with the IRS agent assigned to the case, but he heard nothing further from the agent. Burke admitted that the inaction of the IRS was unusual. Thus, he advised Dimacchia that the best strategy was "to let sleeping dogs lie," not to file a brief, and wait for the statutory period to expire. One day before the expiration of the limitations period, the IRS made a personal assessment against Dimacchia for the amount of withholding taxes due and owing. This malpractice suit against Burke followed. After discovery was completed, defendants filed separate motions for summary judgment. The district court granted the summary judgments because Dimacchia did not establish a genuine issue of material fact or any evidence that "but for" Burke's failure to file a brief Dimacchia would not have been held responsible for the tax assessment.[2] We affirm.
 
 
 3
 In a federal diversity case such as this, the district court must apply the substantive law of the forum state. Erie RR v. Tompkins, 304 U.S. 64 (1938). Under Ohio law, in a malpractice action, a plaintiff has the burden of proving that an attorney-client relationship existed, that the attorney committed acts of negligence and that the plaintiff suffered damages proximately caused by the alleged negligence. He must further prove the fact and the extent of the injury alleged. Howard v. Sweeny, 27 Ohio App.3rd 41, 499 N.E.2d 383 (1985). One of the acts of negligence Dimacchia now relies upon is the contention that Burke breached his duty by failing to represent his client "zealously within the bounds of the law" as required by Ohio Code of Professional Responsibility EC7-1. Dimacchia did not raise this issue below and we will not consider issues raised for the first time on appeal. See, e.g., Bannert v. American Can Company, 525 F.2d 104, 111 (6th Cir.1975), cert. denied, 426 U.S. 942 (1976).[3]
 
 
 4
 There was no evidence that Burke's handling of this matter fell below the level of competent service. Burke did the initial research and discussed his theory with the IRS agent assigned to the case. Dimacchia, however, argues that he was deprived of the "opportunity" to submit the theory to the IRS. Since Burke orally discussed the theory with the IRS, the only remaining issue is his failure to submit a formal written statement. Expert evidence is required in a legal malpractice case to establish the attorney's breach of his or her duty. Bloom v. Dieckmann, 11 Ohio App3d 202, 464 NE2d 187 (1983). In response to the motion for summary judgment, Dimacchia submitted a letter from an "expert." The author of the letter, however, concedes that he may not be aware of all the facts. The facts the expert does recite are not supported by the record before us. This letter is not conclusive and speaks only of possibilities. Standing alone the letter is not sufficient to withstand summary judgment.
 
 
 5
 Appellant also argues that a factual issue exists as to whether he agreed with Burke's decision not to file a brief. The failure to abide by a client's specific instructions may be sufficient to establish a breach of a professional duty without expert testimony. McInnis, 461 NE2d at 1297. According to Dimacchia, he did not agree with Burke, but "deferred to Burke's expertise on the subject." This testimony falls short of establishing a specific instruction.
 
 
 6
 Neither did the district court err in ruling that Burke's failure to file a brief was not the proximate cause of appellant's injury. Under Ohio law, appellant had to prove that "but for" Burke's alleged negligence in not filing a brief with the IRS, the amount he would have been required to pay on the assessment would have been reduced. Jablonski v. Higgins, 6 Ohio Misc.2d 8, 453 NE2d 1296 (1983). The record is devoid of any facts supporting the claim that Dimacchia would not have been found responsible for the assessment "but for" Burke's failure to file the brief. Dimacchia concedes that he was a responsible party and has offered no evidence that the assessment was traceable to Burke's inaction. Even if we assume that Burke's initial legal theory concerning Ameritrust was viable, Dimacchia has not produced any evidence that he could have avoided payment of the full amount assessed. The same factors that caused the IRS to delay assessing appellant until the last possible day could equally have resulted in the failure to proceed against Ameritrust. If Ameritrust had exercised authority over which bills Tacoma paid, the IRS may have found it responsible. See Hutchinson v. United States, 559 F.Supp. 890 (N.D.Ohio 1982). However, Dimacchia's own deposition testimony established that Ameritrust never instructed Tacoma on which bills it was to pay. Further, since liability under 26 U.S.C. Sec. 6672 is joint and several, the IRS would have been under no obligation to assess Ameritrust in addition to Dimacchia, see Reph v. United States, 559 F.Supp. 890 (N.D.Ohio 1985), and no obligation to seek collection from Ameritrust first. Further, no right of contribution would exist in favor of Ameritrust or Dimacchia. See Sinder v. United States, 655 F.2d 729 (6th Cir.1981). In order to survive summary judgment, Burke would have to show that there was evidence from which a jury could find it was more likely than not that the IRS would have and could have assessed Ameritrust and collected from it if Burke had filed a brief. Based upon the record, the success of Burke's initial theory was speculative at best.
 
 
 7
 Dimacchia failed to raise a factual issue that Burke's original theory would have been successful had the attorney not been negligent. The district court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 It is undisputed that Dimacchia was responsible for the tax assessment. A lender such as Ameritrust may be jointly and severally liable under 26 U.S.C. Sec. 6672 or severally liable under 26 U.S.C. Sec. 3505 for the unpaid withholding taxes of its borrower if it controlled the decision as to what bills could or could not be paid. Wilson v. United States, 250 F.2d 312 (9th Cir.1957)
 
 
 [2]
 Because the liability of Blakemore, Rosen (Burke's former law firm) was based on respondeat superior, summary judgment was also granted to Blakemore, Rosen
 
 
 [3]
 Even if this issue had been properly raised before the district court, appellant has failed to show a genuine issue of material fact. Courts have found that ethical considerations constitute some evidence of the standards required of attorneys in legal malpractice actions. E.g., McInnis v. Hyatt Legal Clinic, 10 Ohio St.3d 112, 461 NE2d 1295 (1984). Ethical consideration 7-1 envisions the attorney as an advocate of his or her client's interests. Whether the standard is derived from the elements of negligence or ethical considerations, a lawyer's primary duty is to zealousy represent his or her client. EC-1 merely affirms this general duty. Thus, the duty to zealously represent a client was implicitly included within the standard used by the district court